IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE LOPEZ, | No. C 11-2644 YGR (PR) |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; AND TERMINATING PLAINTIFF'S PENDING MOTION AS MOOT** |
| vs. | |
| MATTHEW CATE, et al., | (Docket Nos. 19, 21) |
| Defendants. | |

## INTRODUCTION

Plaintiff Jose Lopez, a state prisoner currently incarcerated at Pelican Bay State Prison ("PBSP"), filed this *pro se* civil rights complaint ("Compl.") under 42 U.S.C. § 1983. In his complaint, Plaintiff claimed that, in 2009, Defendants California Department of Corrections and Rehabilitation ("CDCR") Secretary Matthew Cate, PBSP Warden G. D. Lewis, PBSP Assistant Warden Francisco Jacquez, PBSP Lieutenant J. McKinney, PBSP Special Agent Reviewers D. Jakabusky and Bucchren, PBSP Sergeants A. Barneburg and D. Barneburg, as well as PBSP Correctional Officers L. Thompson and W. Coleman validated Plaintiff as a gang associate and placed him indefinitely in the Secure Housing Unit ("SHU"), in violation of his due process and equal protection rights. (Compl. at 3.)

Before the Court are Defendants' motion to dismiss ("MTD") (Docket No. 19) and Plaintiff's motion entitled, "Motion for a Court Order Directing Prison Officials at PBSP to Allow Him to Engage in Discovery and the Issuance of a Protective Order to this Action" (Docket No. 21).

For the reasons set forth below, the Court GRANTS Defendants' motion to dismiss and terminates Plaintiff's pending motion as moot.

## BACKGROUND

### I. Factual Background

The process of identifying gang associates in California prisons is called "validation." Validation must be supported by at least three independent "source items of documentation"

indicative of gang affiliation. Cal. Code Regs. tit. 15, § 3378(c)(4). The inmate is given written notice that he will be interviewed as part of the validation process. *Id.* at § 3378(c)(6)(B). Any non-confidential source items are disclosed to the inmate at that time. *Id.* at § 3378(c)(6)(c). Any confidential information that is used as a part of the validation process is disclosed to the extent permissible. *Id*. After the interview is conducted, a report is submitted with the validation package to the Office of Correctional Safety. *Id.* at § 3378(c)(6)(E). Inmates who are undergoing gang validation are housed in the Administrative Segregation Unit ("ASU") for safety purposes. *See id.* at § 3335(a). Placement in the ASU is reviewed every ten days. *Id*. at § 3335(c).

If an inmate is validated as a gang associate, he is considered a security threat and is placed in the SHU for an indeterminate term. *Id*. at § 3341.5(c)(2)(A)(2). The Institutional Classification Committee ("ICC") reviews an indeterminate SHU term for gang validation at least once every 180 days. *Id.* at (c)(2)(A)(1). Once an inmate has been validated, he will be considered an active associate until he has been free of any gang activity for six years. *Id.* at §§ 3341.5(c)(5), 3378(e).

Plaintiff, who claims to be Hispanic, is currently serving a sentence of life without possibility of parole. (Compl. at 3; MTD at 3.) In his complaint, Plaintiff alleges that on May 27, 2009, he was placed in the ASU pending the completion of his gang validation. (Compl. at 4.) Six source items of documentation were relied on in conjunction with Plaintiff's gang validation. (Compl., Exs. A-G.) These six source items linked Plaintiff to the Mexican Mafia gang. (*Id*.)

The first source item used in Plaintiff's gang validation process was an interview that Defendant A. Barneburg conducted of a confidential informant. (Compl., Ex. A.) This interview linked Plaintiff to an incident that was carried out at the bequest of "a validated Mexican Mafia member." (*Id*.) The second source item was a report that documented Plaintiff's participation in a protest that included other members of the Mexican Mafia. (Compl., Ex. B.) The third source item used in Plaintiff's gang validation process was a photograph of his tattoo. (Compl., Ex. C.) This tattoo is a symbol of the Mexican Mafia. (*Id*.) The fourth source item used in Plaintiff's gang validation process was an interview of a confidential informant conducted by Defendant Thompson. (Compl., Ex. D.) In this interview, the confidential informant stated that Plaintiff had conducted an assault at the direction of the Mexican Mafia. (*Id*.) The fifth source item used in Plaintiff's gang

2

1  validation process was an interview that was conducted by Defendant Coleman.  (Compl., Ex. E.)
2  Defendant Coleman interviewed a confidential informant who disclosed that Plaintiff had conducted
3  another assault at the direction of the Mexican Mafia.  (*Id*.)  Finally, the sixth source item
4  constituted two reports that were written in conjunction with an incident in which Plaintiff attacked
5  his cellmate with a razorblade.  (*Id*.)

6  Plaintiff was given proper notice that he would be interviewed in conjunction with the
7  validation process.  (*Id*.)  Thereafter, on June 9, 2009, Defendant Coleman interviewed Plaintiff
8  pursuant to the regulations governing the gang validation process.  (*Id*.)  At this interview, Plaintiff
9  challenged the reliability of the source items used in his validation process.  (*Id*.)  Defendant
10 Coleman drafted his report in conjunction with the interview, and Defendant McKinney reviewed
11 the report and validation source items and submitted them to the Office of Correctional Safety.  (*Id*.)

12 On September 28, 2009, the Office of Correctional Safety validated Plaintiff as an associate
13 of the Mexican Mafia.  (*Id*.)  Thereafter, Plaintiff was moved to the SHU for an indefinite term.  (*Id*.)

14 **II.    Procedural Background**

15 On June 2, 2011, Plaintiff filed this *pro se* civil rights action under 42 U.S.C. § 1983.
16 Plaintiff named Defendants Cate, Lewis, Jacquez, McKinney, Jakabusky, Bucchren, A. Barneburg,
17 D. Barneburg, Thompson, and Coleman in his complaint.  (*Id*. at 2-3.)  Plaintiff seeks injunctive
18 relief and monetary damages.  (*Id*. at 12.)

19 In its Order of Service dated July 1, 2011, the Court found cognizable claims of due process
20 and equal protection violations against Defendants.  (Docket No. 4.)  In that same Order, the Court
21 directed the United States Marshal ("Marshal") to serve Defendants.  (*Id*.)  The Marshal successfully
22 served some of these Defendants, but returned the summons unexecuted as to Defendants Jakabusky
23 and Bucchren.  (Docket Nos. 7, 28.)  The Marshal informed the Court that aforementioned
24 Defendants' summons were each returned unexecuted because PBSP indicated that they have "no
25 employee with this name."  (*Id*.)  To date, Defendants Jakabusky and Bucchren have not been served
26 in this action.

27 On January 23, 2012, the served Defendants filed their motion to dismiss.  (Docket No. 19.)
28

3

On January 25, 2012, Plaintiff filed his "Motion for a Court Order Directing Prison Officials at PBSP to Allow Him to Engage in Discovery and the Issuance of a Protective Order to this Action." (Docket No. 21.)

On March 8, 2012, Plaintiff filed his Opposition ("Opp'n") to Defendants' motion to dismiss. (Docket No. 25.)

On March 23, 2012, Defendants' filed their reply to Plaintiff's opposition. (Docket No. 26.)

## DISCUSSION

### I.  Standard for Review

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (1964).

In considering whether the complaint is sufficient to state a claim, the district court must accept all factual allegations as true and construe them in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007); *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). However, the court need not accept as true allegations that are legal conclusions, unwarranted deductions of fact or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988, *amended*, 275 F.3d 1187 (9th Cir. 2001). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

A plaintiff may negate his claim by including unnecessary details that contradict it. *Sprewell*, 266 F.3d at 988. A court, for example, is not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint. *Bell Atl. Corp.*, 550 U.S. at 557; *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998). "[C]onclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim." *McGlinchy v. Shell Chemical Co.,* 845 F.2d 802, 810 (9th Cir. 1988). A court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot

4

1 reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-
2 55 (9th Cir. 1994).

## II. Analysis

In his complaint, Plaintiff claims that he was denied due process when Defendants validated him as an associate of the Mexican Mafia and moved him to the SHU based on false and unreliable information and on his Hispanic race. Plaintiff also claims that the gang validation process violates the Equal Protection Clause because it targets Hispanic inmates.

In their motion to dismiss, Defendants claim: (1) Plaintiff does not allege a constitutionally-protected liberty interest to state a claim for a violation of the Due Process Clause; (2) even if Plaintiff had a liberty interest at stake, his allegations demonstrate that Defendants provided adequate procedural protections that meet due process requirements for administrative functions; (3) Plaintiff fails to allege a violation of the Equal Protection Clause based on his and other Hispanic inmates' classification as a gang associates because he has not alleged that any similarly situated individuals were treated differently from him; (4) Plaintiff fails to allege that Defendants were motivated by a discriminatory purpose; (5) Defendants Cate and Lewis are immune from suit under § 1983 due to their supervisory role; and (6) the doctrine of qualified immunity shields Defendants from liability.

In his opposition, Plaintiff argues that his due process rights were violated when Defendants denied him a "meaningful opportunity to be heard" prior to his consignment to indefinite segregation. (Opp'n at 18.) Additionally, Plaintiff contends that his allegations are in fact sufficient to state an equal protection claim. (*Id*. at 19.) Plaintiff also argues that Defendants Cate and Lewis are not exempt from liability. (*Id*. at 21.) Finally, Plaintiff argues that Defendants are not entitled to qualified immunity. (*Id*.)

### A. Due Process Claim

Interests that are procedurally protected by the Due Process Clause may arise from two sources -- the Due Process Clause itself and laws of the states. *See Meachum v. Fano*, 427 U.S. 215, 223-27 (1976). In the prison context, changes in conditions so severe as to affect the sentence imposed in an unexpected manner implicate the Due Process Clause itself, whether or not they are

5

authorized by state law. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995). A state may not impose such changes without complying with minimum requirements of procedural due process. *See id.* at 484.

Defendants argue, correctly, that their decision to validate Plaintiff as a gang associate by itself does not violate his due process rights. As mentioned above, the decision led to Plaintiff's retention in the SHU for an indefinite period. The hardship associated with such housing, including the loss of recreational and rehabilitative programs or confinement to one's cell for a lengthy period of time, is not so severe as to violate the Due Process Clause itself. *See Toussaint v. McCarthy*, 801 F.2d 1080, 1091-92 (9th Cir. 1986) (applying *Hewitt v. Helms*, 459 U.S. 460 (1983)), *overruled in part on other grounds*, *Sandin*, 515 U.S. 472 (Supreme Court moved away from its approach in previous cases wherein it had found liberty interests to be present where prison regulations contained "mandatory language" and "specific substantive predicates," and shifted its focus from the language of the prison regulations to the nature of the deprivation).

This conclusion does not end the due process inquiry, however. Deprivations that are authorized by state law and are less severe or more closely related to the expected terms of confinement may also amount to deprivations of a procedurally protected liberty interest, provided that: (1) state statutes or regulations narrowly restrict the power of prison officials to impose the deprivation, i.e., give the inmate a kind of right to avoid it, and (2) the liberty in question is one of "real substance." *See Sandin,* 515 U.S. at 477-87. Generally, "real substance" will be limited to freedom from (1) a restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *id.* at 484, or (2) state action that "will inevitably affect the duration of [a] sentence," *id.* at 487.

Defendants argue that Plaintiff had no procedurally protected liberty interest in connection with their review of his gang status. They claim that Plaintiff's placement in the SHU "does not lengthen his sentence of life without the possibility of parole." (MTD at 7.) They add that Plaintiff's "confinement only lasts until he decides to debrief, or until he is considered inactive." (*Id.* (citing Cal. Code Regs. tit. 15, §§ 3341.5(c)(5), 3378(e), 3378.1(d).) Under *Sandin*'s first prong the applicable state regulations do not "narrowly restrict" Defendants' power to periodically review

6

1    Plaintiff's gang status and keep him in the SHU. Once an inmate is validated as a gang associate and
2    placed in the SHU, the regulations allow but do not require further periodic review of whether the
3    inmate remains active with the gang and should stay on the SHU. *See* 15 Cal. Code Regs. tit. 15,
4    §§ 3341.5(c)(5), 3378(e). Because prison officials may, but are not required to, conduct these
5    reviews, the regulations do not give Plaintiff the right to such a review or to release from the SHU.
6    Consequently, Plaintiff's claim fails to meet *Sandin*'s first prong of showing that Defendants' power
7    to impose the continued deprivation was narrowly restricted. *Accord Ruiz v. Cate*, 2010 WL 546707
8    at *3 (N.D. Cal. Feb. 10, 2010) (Patel, J.); *Zarate v. Tilton*, 2009 WL 311401 at *4 (N.D. Cal. Feb.
9    9, 2009) (Illston, J.).

10          Although Defendants have shown that Plaintiff has failed to satisfy the first prong of *Sandin*,
11   the Court notes that they have not shown that Plaintiff fails on *Sandin*'s second prong -- that the
12   deprivation caused by Defendants' actions is one of "real substance." Defendants' decision led to
13   Plaintiff's continued detention in the SHU for an indefinite period. An indefinite term in that kind of
14   housing has been held to be an "atypical and significant hardship within the correctional context" so
15   as to meet *Sandin*'s second prong. *Wilkinson v. Austin*, 545 U.S. 209, 223-25 (2005). Defendants
16   make much of the fact that Plaintiff was already serving a sentence of life without the possibility of
17   parole when they made their decision. That is not the test under *Sandin*. The measure of the
18   deprivation under *Sandin* is how it compares to "ordinary" prison life, not how it compares to the life
19   that the particular inmate happened to experience before the deprivation was imposed. *See* 515 U.S.
20   at 484. As Defendants' decision led to Plaintiff's staying in the SHU indefinitely, a deprivation that
21   has been held to be of "real substance," Plaintiff's claim does satisfy *Sandin*'s second prong.

22          In any event, even if Plaintiff's claim satisfied both prongs of *Sandin* such that Defendants'
23   decision to validate him as a gang associate implicated a liberty interest protected by due process,
24   Plaintiff has failed to state a cognizable claim for the violation of his right to due process because the
25   allegations in the complaint and its attachments establish that Plaintiff received the process he was
26   due. Plaintiff contends that he did not receive adequate due process because (1) Defendants did not
27   afford him adequate procedures when they validated him as a gang associate and determined his
28   housing placement; and (2) Defendants' decision was not supported by at least "some evidence" of

7

his continued gang activity.

First, Plaintiff's allegations in his complaint show that he was afforded adequate procedural protections. The amount of procedural protections required in prison depends on whether the context is disciplinary or administrative. The Ninth Circuit Court of Appeals has stated that housing gang affiliates in the SHU is administrative:

> California's policy of assigning suspected gang affiliates to the Security Housing Unit is not a disciplinary measure, but an administrative strategy designed to preserve order in the prison and protect the safety of all inmates. Although there are some minimal legal limitations[,] . . . the assignment of inmates within the California prisons is essentially a matter of administrative discretion.

*Bruce v. Ylst*, 351 F.3d 1283, 1287 (9th Cir. 2003) (emphasis added and citations omitted). For administrative functions, due process only requires that prison officials provide the inmate with "some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him" to segregation. *Id.* (citations omitted). Here, Plaintiff's complaint details his notice of the charges and repeated opportunities to present his views orally and in writing to the officials charged with gang validation and housing placement. Plaintiff states that "[o]n June 9, 2009, Defendant W. Coleman interviewed Plaintiff relative to the documentation in the validation package," that Plaintiff "submitted two pre-printed pages . . . challenging all six (6) source items of documentation," and that Plaintiff "verbally re-iterated his written response . . . and provided Defendant W. Coleman with names of the inmates to be question[ed] and [] the location of relevant documentation that would substantiate his refuting arguments . . . ." (Compl. at 7.) After Plaintiff presented his views to Defendant Coleman, Plaintiff claims that Defendant McKinney "reviewed the documents as a validation package" (*id.* at 8), and that Plaintiff appealed before the ICC on October 22, 2009 and April 4, 2010, where he "addressed his improper validation, segregation and retention in the A.S.U.-1 as a SHU endorsed gang validated inmate" (*id.*). Plaintiff then describes how his views were then presented to additional correctional personnel through four separate prison grievances. (*Id.* at 9-10.) The Court finds that Plaintiff's complaint shows that Defendants satisfied due process by providing him with "some notice of the charges against him and an opportunity to present his views" to the officials charged with validating him and determining his housing placement. *Bruce*, 351 F.3d at 1287. Because Plaintiff admits he

8

was given some notice of the charges against him and an opportunity to present his views, the Court finds unavailing his argument that his due process rights were violated because he was not afforded adequate procedural protections. *Id.*

Second, the Ninth Circuit requires that "some evidence" support a decision to place an inmate in segregation for administrative reasons. *Bruce*, 351 F.3d 1287-88. The standard is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced. *See Toussaint*, 801 F.2d at 1105. Ascertaining whether the standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses or weighing of the evidence. *See id.* Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached. *See id.* Here, two confidential informants identified Plaintiff as being associated with gang-related assaults, and Plaintiff's own tattoo linked him to the Mexican Mafia gang. (Compl., Exs. C, D, E.) Moreover, documentation linked Plaintiff to a protest conducted by the Mexican Mafia. (Compl., Ex. B.) This amounts to "some evidence" because it could be deduced therefrom that Plaintiff remained active with the gang. *See Bruce*, 351 F.3d at 1288 (noting that statement from prison informant would on its own constitute "some evidence"). Plaintiff's arguments to the contrary challenge the persuasiveness of this evidence, but the weighing of the evidence and the credibility of the informants are not part of the analysis of whether the relatively low "some evidence" standard was met.

For the foregoing reasons, the allegations in the complaint and the attachments thereto, even when liberally construed in Plaintiff's favor, establish that Defendants' decision to validate him as a gang associate and to place him in the SHU indefinitely did not violate his right to due process. Accordingly, Plaintiff's due process claim must be dismissed for failure to state a cognizable claim for relief under 42 U.S.C. § 1983. Defendants' motion to dismiss is GRANTED as to Plaintiff's due process claim.

### B. Equal Protection Claim

As mentioned above, Plaintiff states that he is Hispanic. He alleges that the gang validation process at PBSP violates the Equal Protection Clause because it targets Hispanic inmates.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall

9

'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985).

A plaintiff alleging denial of equal protection under 42 U.S.C. § 1983 based on race or other suspect classification must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent. *Monteiro v. Tempe Union High School Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998). To state a claim for relief, the plaintiff must allege that the defendant state actor acted at least in part because of the plaintiff's membership in a protected class. *Serrano v. Francis*, 345 F.3d 1071, 1081-82 (9th Cir. 2003); *see also Byrd v. Maricopa Cnty. Sheriff's Dep't*, 629 F.3d 1135, 1140 (9th Cir. 2011) (en banc) (claim that alleged harmful treatment but mentioned nothing about disparate treatment was properly dismissed). Proof of a discriminatory intent or purpose is required to show an equal protection violation based on race. *City of Cuyahoga Falls, Ohio v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 193-94 (2003).

Here, Plaintiff has not met the heightened pleading standard. His allegation that the gang validation process violates the Equal Protection Clause because it targets Hispanic inmates is entirely conclusory. Moreover, a prison regulation or practice claimed to infringe on an inmate's constitutional rights nonetheless is valid if it is "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987); *see also Washington v. Harper*, 494 U.S. 210, 223-25 (1990) (*Turner* standard of review applies in all circumstances in which needs of prison administration implicate constitutional rights). The validation procedure used at PBSP is a legitimate effort to deal with the recognized problem of prison gangs. In the Ninth Circuit, it is clear that prisons have a legitimate "penological" (that is, relating to prison management and the treatment of offenders) interest in stopping prison gang activity, *see Bruce*, 351 F.3d at 1289, and the prisoner bears the burden of proving and pleading the absence of a legitimate penological goal in his validation as a gang member, *see id.* Plaintiff has not sufficiently pled facts to allege that this system is racially biased or capable of being so skewed. *See* Cal. Code Regs. tit. 15, § 3378 *et seq.*

In addition, Defendants argue that applying modified programs to Northern and Southern Hispanic gang members and associates does not violate the Equal Protection Clause. The Ninth

Circuit specifically held that there was no discriminatory intent behind regulations designed to keep Northern and Southern Hispanic gang members apart from each other and therefore there was no Equal Protection Clause violation. *Baker v. Kernan*, 795 F. Supp. 2d 992, 994-95 (9th Cir. 2011). In *Baker*, the plaintiffs -- Norteños -- had fewer job opportunities, a smaller yard, less recreational time, and limited access to the canteen and chapel than other groups of the same and other races, and still the Ninth Circuit held there was no violation of the Equal Protection Clause. *Id.* at 993-95. In analyzing the challenged government action, the Ninth Circuit held that because the regulations applied only to gang members, not Hispanic inmates generally, they were not race-based and therefore warranted only rational basis scrutiny. *Id.* For the same reasons, Plaintiff does not state an equal protection claim based on the process of validating Hispanic gang members. As mentioned above, PBSP has a compelling interest in combating gangs, and identifying individual gang affiliates through the validation process is both rationally related and narrowly tailored to that interest. *Id.*

Furthermore, regulations governing gang affiliates are not based on race; they are based on gang membership. *Id.* at 994. Because the regulations are race neutral, Plaintiff can only state an equal protection claim under a theory of disparate impact. For a disparate impact claim, Plaintiff would have to allege: (1) that similarly situated non-Hispanic inmates were not validated; and (2) that the prison's validation methods are motivated by a discriminatory purpose. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977); *McLean v. Crabtree*, 173 F.3d 1176, 1185 (9th Cir. 1999) (citations omitted). Plaintiff has not alleged either prong.

The Court finds that Plaintiff fails to allege that similarly situated individuals who are not Hispanic were treated differently. Instead, Plaintiff expressly admits that similarly situated inmates of all races are validated as gang members. Plaintiff's complaint alleges that the CDCR has "identified and designated seven (7) individual prison gangs and recognized five (5) categories of gangs other than prison gangs as disruptive groups within the ethnicities of inmate population [sic]." (Compl. at 4.) These groups include African-American, Caucasian, Asian, and Hispanic individuals. The list comprises:

      (1) the Crip street gang;
      (2) the Blood street gang;
      (3) the Northern Hispanic street gang;
      (4) the Southern Hispanic street gang;

>    (5) the Asian street gang;
>    (6) the Bulldogs street gang;
>    (7) the white supremacists street gang;
>    (8) the Black street gang (not Crip nor Blood);
>    (9) the outlaw motorcycle clubs street gang; and
>    (10) any other street gang not listed.

Cal. Code Regs. tit. 15, § 3375.3(a)(4)(A).

According to policy and practice, inmates of all racial groups are subject to gang validation. *Id.* Plaintiff's allegations state that African-American, Caucasian, Asian, and Hispanic individuals are all subject to gang validation. (Compl. at 4.) Because Plaintiff has failed to show that similarly situated non-Hispanic individuals were exempt from validation, he has not alleged a violation of the Equal Protection Clause.

The Equal Protection Clause ensures that similarly situated persons are treated alike, but it does not guarantee absolute equality. *Bruce*, 351 F.3d at 1288. "[F]ederal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment." *Sandin*, 515 U.S. at 482 (citations omitted). Even if Plaintiff did not receive the exact same treatment as another validated gang associate, he fails to state an equal protection claim. Because Plaintiff "was afforded the process he was due, the same process all gang affiliates are due, any purported difference in treatment does not rise to the level of an equal protection violation." *Bruce*, 351 F.3d at 1288.

Finally, the Court finds that Plaintiff has also failed to allege discriminatory intent on the part Defendants. *Vill. of Arlington Heights*, 429 U.S. at 265. Plaintiff must allege that Defendants undertook a course of action because of, and not merely in spite of, adverse effects upon an identifiable group. *See Ashcroft v. Iqbal*, 556 U.S. 662, 667-77 (2009) (citations omitted). Plaintiff's complaint states that "[t]he CDC[R] determined that gangs present a serious threat to the safety and security of it[]s prisons" and, therefore, must be combated. (Compl. at 4.) Plaintiff's allegations further state that the prison investigates and tries to "suppress" gangs out of concern for inmate and employee "safety and security," not racial bias. (*Id.*) To state a claim for an equal protection violation, Plaintiff would have to plead sufficient facts to show that Defendants adopted and implemented the regulations or policies at issue "not for a neutral, investigative reason but for the purpose of discriminating on account of race . . . ." *Ashcroft*, 556 U.S. at 677. He has not done so.

1  When the Court must choose "between that 'obvious alternative explanation'" of trying to ensure
2  prison safety and security "and the purposeful, invidious discrimination [Plaintiff] asks us to infer,
3  discrimination is not a plausible conclusion." *Id.* at 681-82 (citations omitted).

4  In sum, the Court finds that Plaintiff's allegations in his complaint fail to show that he was
5  discriminated against merely because he is Hispanic or that the gang validation process at PBSP
6  targets Hispanics. His presence in the SHU is entirely attributable to reliable information that
7  validated him as a gang associate. This Court has found that the basis for Plaintiff's gang validation
8  passes constitutional muster. *See supra*. There is nothing to indicate any racial motivation. In
9  addition, Plaintiff does not state an equal protection claim, because he fails to allege that similarly
10 situated individuals were treated differently, or that Defendants were motivated by a discriminatory
11 purpose. Accordingly, Plaintiff's equal protection claim must be dismissed for failure to state a
12 cognizable claim for relief under 42 U.S.C. § 1983. Therefore, Defendants' motion to dismiss is
13 GRANTED as to Plaintiff's equal protection claim.

### C.   Supervisory Defendants Cate and Lewis

15 Plaintiff sues Defendants Cate (CDCR Secretary) and Lewis (PBSP Warden) in their
16 supervisory capacity. Plaintiff does not allege facts demonstrating that these Defendants violated his
17 federal rights, but seems to claim they are liable based on the conduct of their subordinates. There
18 is, however, no respondeat superior liability under § 1983 solely because a defendant is responsible
19 for the actions or omissions of another. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). A
20 supervisor generally "is only liable for constitutional violations of his subordinates if the supervisor
21 participated in or directed the violations, or knew of the violations and failed to act to prevent them."
22 *Id.* A supervisor may also be held liable if he or she implemented "a policy so deficient that the
23 policy itself is a repudiation of constitutional rights and is the moving force of the constitutional
24 violation." *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc). "Vague
25 and conclusory allegations of official participation in civil rights violations are not sufficient to
26 withstand a motion to dismiss." *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th
27 Cir. 1982). Where the allegations against supervisory officials are simply "bald" or "conclusory"
28 because they "are nothing more than a formulaic recitation of the elements," the allegations are "not

13

entitled to be assumed true." *See Ashcroft*, 556 U.S. at 681 (making distinction between "conceivable" and "plausible").

Here, as mentioned above, Plaintiff names Defendants Cate and Lewis as Defendants in this action but makes no allegations against them individually. According to Plaintiff, Defendant Cate, as the CDCR Secretary, is "legally responsible for the overall operation of the department and each institution under its jurisdiction, including [PBSP.]" (Compl. at 2.) Similarly, Plaintiff claims that Defendant Lewis, as PBSP Warden, is "legally responsible for the operations of [PBSP] and for the welfare of all the inmates of that prison." (*Id.*) Plaintiff does not allege that Defendants Cate or Lewis were at all involved in his gang validation. Because none of Plaintiff's factual allegations relate to any action individually performed by Defendants Cate or Lewis, the claims against them must be dismissed for failure to state a claim. Accordingly, Defendants' motion to dismiss is GRANTED as to Plaintiff's supervisory liability claims against Defendants Cate and Lewis.

### D.     Unserved Defendants Jakabusky and Bucchren

As mentioned above, Defendants Jakabusky and Bucchren have not been served in this action, and they have not joined the other Defendants in their motion to dismiss.

It is apparent, however, that even though Defendants Jakabusky and Bucchren have not been joined in this action, the claims against them are subject to dismissal. Specifically, the allegations against Defendants Jakabusky and Bucchren are the same as those against the other served Defendants to this action, and there is no suggestion in the complaint and exhibits attached thereto, or in the briefs and exhibits filed in connection with the instant motion to dismiss, that the analysis of the claims against Defendants Jakabusky and Bucchren differs from the analysis of the claims against the other served Defendants. *Cf. Columbia Steel Fabricators, Inc. v. Ahlstrom Recovery*, 44 F.3d 800, 803 (9th Cir. 1995) (affirming grant of summary judgment in favor of nonappearing defendant where plaintiff, in response to summary judgment motion filed by defendant who had appeared, had "full and fair opportunity to brief and present evidence" on dispositive issue as to claim against nonappearing defendant). As the Court has found Plaintiff fails to state a claim upon which relief can be granted with respect to his claims against the other served Defendants herein, Plaintiff cannot prevail on his claims against Defendants Jakabusky and Bucchren. Accordingly, the

Court also DISMISSES the claims against Defendants Jakabusky and Bucchren.

**E.    Summary**

The Court finds that Plaintiff's complaint fails to state a claim upon which relief can be granted.  Defendants' motion to dismiss is GRANTED,[1] and the complaint is DISMISSED as to all claims.  Furthermore, the Court also DISMISSES the claims against unserved Defendants Jakabusky and Bucchren.

**CONCLUSION**

For the reasons stated above, the Court orders as follows:

1.    Defendants' motion to dismiss (Docket No. 19) is GRANTED as to all claims against the served Defendants, and also as to unserved Defendants Jakabusky and Bucchren.

2.    The Clerk of the Court shall enter judgment, terminating Plaintiff's pending motion (Docket No. 21) as moot, and close the file.  Each party shall bear his or her own costs.

3.    This Order terminates Docket Nos. 19 and 21.

IT IS SO ORDERED.

DATED: September 30, 2012

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[1] Because the Court has granted Defendants' motion to dismiss as to all of Plaintiff's claims, it need not address Defendants' alternative argument that they are entitled to qualified immunity.